## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **EILEEN KONIECZNY** | : | **CIVIL ACTION** |
| | : | **NO.**  3:14-cv-1847 |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT D. BIRNBAUM,** | : | |
| **AARON W. FORD,** | : | |
| **ANDREW SIEGHART,** | : | |
| **SANDRA W. SOULE** | : | |
| **DOUBLING ROAD HOLDINGS, LLC** | : | |
| **and** | : | |
| **CURALEAF, LLC** | : | |
| | : | |
| **Defendants.** | : | |

## CIVIL COMPLAINT

## INTRODUCTION

1.     Plaintiff, Eileen Konieczny brings this action to redress her wrongful ouster from a venture she founded, and for which she was instrumental in successfully obtaining a license in January 2014 to produce medical marijuana in the State of Connecticut.

2.     As a registered nurse who has cared for countless terminally ill patients, Plaintiff is a vocal advocate of the medicinal benefits of medical marijuana and the passage of statutes and regulations regarding the medicinal use of marijuana within the State of Connecticut.

3.     More recently, Plaintiff is the founder and driving force behind Curaleaf, LLC, a limited liability company formed in the State of Connecticut ("Curaleaf") for the purpose of procuring a license to produce medical marijuana for use by qualifying patients

with symptoms from a debilitating medical condition.

4.      Leading up to her successful efforts to procure a license for producing medical marijuana in Connecticut, Plaintiff developed a business plan requiring funding, and was approached by Defendant, Robert D. Birnbaum, due to her experience and stature in the medical field, while she was transitioning out of her position as Executive Director of the Connecticut Cannabis Business Alliance.

5.      Plaintiff spoke with Defendants about starting a business in the medical marijuana industry in Connecticut soon after leaving the Connecticut Cannabis Business Alliance.

6.      After working to obtain a license from the State of Connecticut, Plaintiff set about continuing to implement Curaleaf's business plan by establishing a site for growing operations and readying Curaleaf for marijuana production activities.

7.      Plaintiff was excluded from involvement with Curaleaf and its operations by Defendants near the end of May 2014.

8.      In August 2014, when Curaleaf was nearing the initial production phase of its marijuana growing operation, Plaintiff was abruptly and improperly "terminated" from Curaleaf by financial investors on Curaleaf's so-called "Board" for trumped-up reasons, and falsely told that she had no financial interest in the venture embodied by Curaleaf, into which she invested her reputation and sweat equity from its inception in May 2013.

9.      This is no small matter.  Plaintiff is one of three founding management members in Curaleaf.  The financial projections provided to the State of Connecticut by Curaleaf conservatively demonstrate a terminal enterprise value for Curaleaf in excess of $700 million, with Curaleaf management, including Plaintiff, holding 50% of the financial

interest in Curaleaf.

10.     Through this action, Plaintiff seeks to secure her interest in Curaleaf and recover damages for the Individual Defendants' (as defined below) wrongful attempt to strip her of her interest once a production license, grow facility, and operational status were achieved for Curaleaf.

## PARTIES

11.     Plaintiff Eileen Konieczny ("Plaintiff") is an adult individual residing in the State of New York at 114 Mountain Rest Road, New Paltz, New York 12561.  Plaintiff is a founder and member of Defendant Curaleaf, LLC.

12.     Defendant Doubling Road Holdings, LLC, ("DRH") is a Delaware limited liability company with a principal place of business at 145 Doubling Road, Greenwich, Connecticut 06830.

13.     Defendant Curaleaf is a Connecticut limited liability company with a principal place of business at 145 Doubling Road, Greenwich, Connecticut 06830.

14.     Defendant Robert D. Birnbaum ("Birnbaum") is believed to be an adult individual residing in the State of Connecticut at 145 Doubling Road, Greenwich, Connecticut 06830-4040.  Birnbaum is the managing member of DRH and Curaleaf.

15.     Defendant Aaron W. Ford ("Ford") is believed to be an adult individual residing in the State of Connecticut at 43 Harding Road, Old Greenwich, Connecticut 06870-1501.  Ford is a member of DRH and a so-called board member of Curaleaf.

16.     Defendant Andrew J. Sieghart ("Sieghart") is believed to be an adult individual residing in the State of Connecticut at 105 Parade Hill Road, New Canaan, Connecticut 06840-4131.  Sieghart is a member of DRH and a so-called board member of

Curaleaf.

17.     Defendant Sandra W. Soule ("Soule") is believed to be an adult individual residing in the State of Connecticut at 18 Lakeview Drive, Riverside, Connecticut 06868-1111.  Soule is a member of DRH and a so-called board member of Curaleaf.

18.     Defendants Birnbaum, Ford, Sieghart, and Soule will be collectively referred to herein as "Individual Defendants," and the Individual Defendants along with DRH and Curaleaf will be collectively referred to as "Defendants."  Plaintiff and Defendants will be hereinafter collectively referred to as "Parties."

## JURISDICTION AND VENUE

19.     Plaintiff and Defendants are completely diverse, and the amount in controversy exceeds $75,000; therefore, this Court has diversity jurisdiction over the claims in this matter under 28 U.S.C. § 1332(a).

20.     The Individual Defendants are residents of Connecticut and Defendant Curaleaf and DRH are headquartered in Connecticut.  Further, the conduct underlying Plaintiff's claims occurred in Connecticut. Therefore, venue is proper under 28 U.S.C. § 1391(b).

## FACTS

### The Background of Curaleaf

21.     Plaintiff is a registered nurse with over 20 years of experience in the oncology field, and is a board member and current President-Elect of the American Cannabis Nurses Association, and former executive director of the Connecticut Cannabis Business Alliance. Plaintiff is also a member and so-called Board member of Curaleaf.

22.     In 2012, Connecticut passed "An Act Concerning the Palliative Use of

4

Marijuana," (the "Act") which provides for the medicinal use of marijuana for patients suffering from one of eleven specific debilitating illnesses.

23.     In connection with implementing the Act, the State of Connecticut requested applications through a competitive process for licenses to produce and dispense medical marijuana to serve the needs of seriously ill patients in Connecticut.

24.     Plaintiff has a strong vision for advancing the care of patients through the palliative use of medical marijuana and was interested in procuring a license for the production of medical marijuana in Connecticut.

25.     Defendant Birnbaum, a former hedge fund manager, had knowledge of the economic benefits of producing and distributing medical marijuana.  He, along with other financial investors with no experience in the medical marijuana industry, was interested in procuring a license for the production and distribution of medical marijuana in Connecticut.

26.     The Individual Defendants were interested in doing business with Plaintiff in view of her goodwill, reputation, and professional connections in the burgeoning medical marijuana industry.

27.     Accordingly, the Parties agreed to form Curaleaf and apply for a license to produce medical marijuana in Connecticut.

28.     The Individual Defendants assured Plaintiff that she would have control of the operations and mission of the company.

### The Agreement Documented in the Memorandum of Understanding

29.     Plaintiff and the Individual Defendants, among others, entered into a Memorandum of Understanding dated October 9, 2013 ("MOU") to document their mutual agreement regarding the establishment of a medical marijuana venture in Connecticut.  A

copy of the Memorandum of Understanding dated October 9, 2013 is attached hereto and marked as Exhibit A.

30.    The MOU is an agreement between the parties to form three entities in furtherance of procuring licenses to produce and dispense medical marijuana in Connecticut pursuant to the Act and its implementing regulations.

31.    The MOU is a binding contract under Connecticut law because it is a complete statement of all essential terms between the parties and embodies a detailed and specific agreement by the signatories to form and pursue the business of Curaleaf.

32.    The MOU establishes a structure whereby DRH provides funding to Curaleaf for obtaining licensing and ramping-up production operations, and medical marijuana is distributed through a dispensary, subsequently named Apothecary 241, LLC ("Apothecary").

33.    The MOU also provides for the "fundamental economics of our agreement" and specifies: (i) the work necessary to apply for licenses under the State's Medical Marijuana Program and begin a production operation; (ii) the composition of the board of Curaleaf; (iii) the management and governance of Curaleaf; and (iv) the distribution of profits and losses from Curaleaf's operations pursuant to a detailed Management Incentive Plan attached and incorporated into the MOU ("Management Incentive Plan").

34.    The MOU further provides for an initial allocation of membership interests among the managers of Curaleaf to be decided by Curaleaf management and approved by the Board.

35.    As one of three members in Curaleaf, Plaintiff is entitled to a one-third share of the membership interests in Curaleaf.

**The Usurious Loan Arrangement between Defendants and Curaleaf**

36.     The MOU also provided for a management share of returns over the "cost of
capital" of 30% from funds provided by the Individual Defendants and other members of
DRH.

37.     The "cost of capital" mechanism is essentially a disguised, usurious loan,
inasmuch as there is no mechanism for a reduction of principal, and it creates a permanent
diversion of Curaleaf's cash flows so that the DRH investors reap an outsized proportion of
Curaleaf's profits or returns in perpetuity.

38.     Plaintiff was misled by Defendants about a number of critical matters,
including the relationship of DRH to Curaleaf and the "loan" extended by the Individual
Defendants and DRH to Curaleaf and labeled as a cost of capital.

**Implementing the Curaleaf Business Plan**

39.     Less than two weeks after entering into the MOU, on October 22, 2013, DRH
was formed as a limited liability company under the Delaware Limited Liability Company
Act for the purpose of providing funding to Curaleaf and Apothecary.

40.     The Individual Defendants, along with Jack L. Rubin, Kyle Rusconi, Josef J.
Sieghart, and Scott Roth are members and management of DRH.

41.     The Individual Defendants have represented themselves as being the so-called
Board of Curaleaf, along with Plaintiff and April Arrasate, a member of Curaleaf.

42.     Within two days of forming DRH in Delaware, Curaleaf was formed as a
limited liability company under the laws of Connecticut, on October 24, 2013, in order to
implement the agreement in the MOU and pursue a medical marijuana production license in
Connecticut.

43.     At the time of Curaleaf's formation, Plaintiff was Chief Executive Officer of Curaleaf; April Arrasate was the Chief Operating Officer; and Defendant Birnbaum was its Chief Financial Officer.

44.     On or about November 8, 2013, Curaleaf submitted a detailed application to the State of Connecticut for a license to produce medical marijuana under the state's Medical Marijuana Program administered by the Department of Consumer Protection. The purpose of the state's Medical Marijuana Program is to provide access to medical marijuana to qualifying patients receiving medical treatment for a debilitating medical condition.

45.     There were sixteen applications submitted to Connecticut's Medical Marijuana Program seeking one of only three licenses being awarded to produce medical marijuana in Connecticut.  The number of licenses awarded was subsequently increased to four.

46.     Meanwhile, on November 7, 2013, the Parties formed Apothecary for the purpose of obtaining a separate dispensary license under Connecticut's Medical Marijuana Program.

47.     Immediately thereafter, Apothecary submitted an application seeking a dispensary license for the purpose of dispensing medical marijuana in Connecticut.

**Plaintiff Secures the License and Infrastructure for Curaleaf's Operations**

48.     Among her various roles in forming Curaleaf, Plaintiff and April Arrasate were instrumental in selecting and securing the site for Curaleaf's growing operations at 100 Grist Mill Road, Simsbury, Connecticut (the "Simsbury Site"), pursuant to a letter agreement dated November 5, 2013.

49.     The Individual Defendants vetted and approved the Simsbury Site.

50.     Prior to the license application for Curaleaf being submitted, Plaintiff also entered into consulting agreements on behalf of Curaleaf with professionals experienced in botany and managing a facility for the production of medical marijuana, among other things.

51.     On January 2, 2014, representatives from Connecticut's Medical Marijuana Program conducted an extensive interview of Plaintiff and a group of individuals from Curaleaf in connection with the producer license application process.

52.     On January 28, 2014, the State of Connecticut granted a license to Curaleaf to produce medical marijuana in the state, one of only four such initial licenses granted by the State pursuant to the Act.

**Defendants Seize Control of Curaleaf Through a Murky Board Mechanism**

53.     Pursuant to the MOU, the Individual Defendants sat on the Board of Curaleaf and the Board of DRH, established as Curaleaf's financial backer in connection with its participation in the State's medical marijuana program.

54.     At the time of entering into the MOU and during the license application process for Curaleaf, the Individual Defendants agreed with Plaintiff that she would exercise control and direction over the operations and mission of Curaleaf in advancing the alternative treatment options available to qualifying patients with debilitating medical conditions through the use of medical marijuana.

55.     The so-called Board of Curaleaf had no official role at Curaleaf, and Defendants used it as a mechanism to purport to exercise control over Curaleaf and its operations.

56.     Notwithstanding Defendants' attempt to exercise dominion and control over Curaleaf, the only members of Curaleaf are Plaintiff, Defendant Birnbaum and April

Arrasate, Curaleaf's Chief Operating Officer.

57.     Plaintiff and the other members of Curaleaf are the only persons authorized to manage the business, property, and affairs of Curaleaf.

58.     Subsequent to Curaleaf obtaining a producer license and commencing the build-out of its facilities, the Individual Defendants usurped control of Curaleaf and its assets through DRH, in violation of their fiduciary duties to Plaintiff and Curaleaf.

59.     The Individual Defendants lacked the authority to exercise dominion and control over Curaleaf through a so-called Board.

60.     The Board is a sham constructed by Defendants so that they could purport to exercise unfettered control over Curaleaf and extract all of the returns from Curaleaf's operations for themselves and their fellow investors in DRH, to the exclusion of Plaintiff.

61.     In the alternative, to the extent that the Individual Defendants were members of a Board of Directors of Curaleaf, they violated their fiduciary duties to Plaintiff and Curaleaf through their self-dealing, conflicts of interest, and baseless actions by purporting to oust Plaintiff from Curaleaf, seize her membership and financial interests, and enforce the servitude of the disguised loan arrangement between DRH and Curaleaf.

**The Individual Defendants Improperly Seize Control and Terminate Plaintiff**

62.     On August 12, 2014, the Individual Defendants, acting in their purported capacity as the Curaleaf Board, purported to terminate Plaintiff's employment with Curaleaf.

63.     The Individual Defendants attempted to justify Plaintiff's termination on the ridiculous grounds that she did not properly greet Defendant Birnbaum during an industry trade group meeting.

64.     The Individual Defendants later purported to terminate Plaintiff's relationship

and employment with Curaleaf, in concert with other investors acting through their financial interest in DRH, on the contrived basis that Plaintiff was engaging in outside activities connected to her advocacy on behalf of people in other states with debilitating medical conditions seeking to alleviate their symptoms through the palliative use of medical marijuana.

65.     The so-called Curaleaf Board had no good faith reason, or authority, to purport to terminate Plaintiff's employment.

66.     Subsequent to Plaintiff's purported termination by the Board, the Individual Defendants fabricated a new slew of false reasons for purporting to terminate Plaintiff's employment with Curaleaf, including alleged problems with the Simsbury Site and the supposed problems with the cultivation of medical marijuana.

67.     None of the Individual Defendants' alleged reasons for ousting Plaintiff from Curaleaf has any basis in fact.  Rather, the Individual Defendants used Plaintiff's efforts, reputation, and connections to secure a producer license from Connecticut, and then pushed her out once they had a license, a site, and employees in place for production operations. The Individual Defendants engaged in this misconduct for their own selfish financial reasons, so that there would be one less management and member participant entitled to share in any financial rewards from Curaleaf's operations in the future.

**The Individual Defendants' Financial Motive for Improperly Ousting Plaintiff**

68.     After purporting to force her out of Curaleaf, the Individual Defendants further attempted to tell Plaintiff that she had no membership interest in Curaleaf and no right to share in the Management Incentive Plan or share of returns, all of which representations were false, self-interested, and a breach of the Individual Defendants'

fiduciary duties to Plaintiff and Curaleaf.

69.     While applying for the license, Curaleaf disclosed that its production target was between 160 and 330 pounds of medical marijuana during its first year of business.

70.     Upon information and belief, Curaleaf is producing medical marijuana in Connecticut for sale to patients with qualifying medical conditions.

71.     In the Management Incentive Plan, Curaleaf's management members were entitled to an immediate vesting of 10% of Curaleaf's returns over the cost of capital upon the granting of a production license by Connecticut.

72.     The Management Incentive Plan also provided for an additional immediate vesting of 5% of Curaleaf's returns in management members at the time of production of medical marijuana.

73.     The target level of Curaleaf management's share of returns over the cost of capital is 50%, with an annual cap of 10% vesting each year.

74.     In detailed multiyear projections submitted with Curaleaf's producer license application to the State of Connecticut ("Curaleaf Projections"), Defendant Birnbaum projected overall net distributions to Curaleaf management in excess of $353 million based on a 47.84% stake in Curaleaf's returns, and overall net distributions to the investors after their 30% cost of capital of $385 million.

75.     In the event of a sale of Curaleaf, the Curaleaf Projections also forecast sales proceeds of $177.44 million to Curaleaf management and $177.44 million to the Individual Defendants and their DRH co-investors.

76.     Defendant Birnbaum prepared the Curaleaf Projections for submission to the State of Connecticut with the idea that, in his words, he "didn't want to make the numbers

look too good."

77.     Though the Individual Defendants, as members of Curaleaf's Board, were legally bound to act as fiduciaries for the benefit of Curaleaf and its members, the Individual Defendants acted in direct contravention of their fiduciary duties, and instead manipulated the governance, management, and operations of Curaleaf in their capacities as lenders for the sole benefit of DRH and fellow investors in DRH.

78.     Plaintiff never relinquished or agreed to relinquish any membership interest or ownership interest she had in the assets and goodwill of Curaleaf, in the license, or any corporate opportunities that naturally flowed from Curaleaf.

79.     Individual Defendants purport to own and control the Connecticut producer license issued to Curaleaf, and the associated business opportunities, without any right to exercise such control for their own benefit and to the detriment of Curaleaf and its members.

**FIRST CAUSE OF ACTION:**
**BREACH OF CONTRACT**
**(PLAINTIFF v. INDIVIDUAL DEFENDANTS)**

80.     Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

81.     The MOU is a binding contract.

82.     The Individual Defendants breached the contract by failing to abide by its terms providing for Plaintiff's membership interest in Curaleaf.

83.     The Individual Defendants further breached the contract by failing to abide by its terms providing for Plaintiff's financial interest in Curaleaf as a member and member of management.

84.     The Individual Defendants improperly took complete control over Curaleaf

and its operations, finances, and assets.

85.     Plaintiff does not have an adequate remedy at law.

86.     By reason of the foregoing, Plaintiff is entitled to specific performance of the
contract set forth in the MOU.

## SECOND CAUSE OF ACTION:
### BREACH OF PARTNERSHIP AGREEMENT
### (PLAINTIFF v. INDIVIDUAL DEFENDANTS)

87.     In the alternative, if the Court determines that the MOU is not a binding
contract containing all essential terms between the parties, Curaleaf, and all of its attendant
business opportunities, is a venture in the nature of a common law partnership and the
Connecticut Uniform Partnership Act.

88.     Plaintiff and the Individual Defendants entered into a general partnership to
pursue a business for profit as co-owners of Curaleaf and all of its attendant business
opportunities.

89.     Plaintiff is a general partner in Curaleaf and all of its attendant business
opportunities.

90.     The Individual Defendants are general partners in Curaleaf and all of its
attendant business opportunities.

91.     Through their words, conduct, and writings, Plaintiff and the Individual
Defendants entered into a general partnership to share in the profits and losses generated by
the business of Curaleaf and all of its attendant business opportunities.

92.     Curaleaf was formed for the purpose of furthering the interests of the general
partnership entered into between Plaintiff and the Individual Defendants.

93.     The Individual Defendants owe fiduciary duties to Plaintiff and Curaleaf in

connection with the operation of the general partnership.

94.     The Individual Defendants breached their fiduciary duties pursuant to the partnership with Plaintiff by purportedly ousting her from her employment, membership interests, share of profits and losses, and control over the operations of the general partnership for false, contrived, and selfish reasons, as set forth hereinabove and throughout.

95.     The Individual Defendants further breached their fiduciary duties to Plaintiff by engaging in self-dealing, including causing the partnership to enter into a usurious loan arrangement to the detriment of Plaintiff and the partnership.

96.     By reason of the foregoing, Plaintiff has suffered damages in an amount to be established at trial, including all consequential, exemplary, punitive, and multiple damages and attorneys' fees incurred by Plaintiff.

**THIRD CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTIES**
**(PLAINTIFF v. INDIVIDUAL DEFENDANTS)**

97.     Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

98.     Plaintiff is a member and Board member of Curaleaf.

99.     As the managing member of Curaleaf, Defendant Birnbaum owes a fiduciary duty to Curaleaf and its other members.

100.    As Board members of Curaleaf, Defendants Ford and Sieghart owe Curaleaf and its members' fiduciary duties.

101.    The Individual Defendants owe Plaintiff and Curaleaf a fiduciary duty to act with the utmost confidence, loyalty, good faith, honesty, and trust, and not to favor their own interests at the expense of their fiduciary obligations to Plaintiff and Curaleaf.

102.    Plaintiff reposed her trust and confidence in the Individual Defendants.

103.    Relying on the representations made by the Individual Defendants that she would have control of the operations and mission of the enterprise, Plaintiff invested her time and expertise in the medical field to obtain a producer license and establish the Simsbury Site and production operations for Curaleaf.

104.    The Individual Defendants, acting through DRH, took complete control over the operations of Curaleaf and purported to oust Plaintiff from her employment and membership interest in Curaleaf.

105.    Individual Defendants also orchestrated usurious loan arrangements between Curaleaf and DRH, and diverted Curaleaf funds to DRH for their own benefit.

106.    The Individual Defendants made material misrepresentations and omissions, failed to disclose material facts regarding the status of Curaleaf, and placed their interests ahead of the Plaintiff's interests and the interests of Curaleaf.

107.    Through the foregoing conduct, the Individual Defendants breached their fiduciary duties to Plaintiff and Curaleaf.

108.    Plaintiff has incurred consequential damages as a result of the Individual Defendants' breach of fiduciary duties, in an amount to be established at trial.

**FOURTH CAUSE OF ACTION**
**FRAUDULENT INDUCEMENT**
**(PLAINTIFF v. INDIVIDUAL DEFENDANTS)**

109.    Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

110.     The Individual Defendants represented that Plaintiff would have control of the operations and mission of Curaleaf.

111.    Plaintiff agreed to do business with the Individual Defendants relying on the Individual Defendants' representations.

112.    However, the Individual Defendants subsequently took exclusive control of Curaleaf through their instrument, DRH, and the so-called Board of Curaleaf.

113.    Had the Individual Defendants revealed the truth from the beginning of their relationship with Plaintiff, she would not have entered into the MOU to do business with the Individual Defendants.

114.    Individual Defendants fraudulently induced Plaintiff to do business with them by misrepresenting Plaintiff's role, membership and financial interest in Curaleaf, as well as their intention to purport to oust her after Curaleaf was a going concern.

115.    Plaintiff did the preparatory and groundwork to obtain the producer license for Curaleaf, and was successful in obtaining the license, securing the Simsbury Site for production, and hiring employees and consultants.

116.    Plaintiff reasonably relied upon the Individual Defendants' representations as true.

117.    Plaintiff's reasonable reliance caused damage to her, including pecuniary losses, inclusive of accrued interest, and damages in excess of the contract value, exclusive of attorneys' fees, in an amount to be established at trial.

## FIFTH CAUSE OF ACTION
## COMMON LAW FRAUD
## (PLAINTIFF v. DEFENDANTS)

118.    Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

119.    The Individual Defendants, acting through DRH, took control of Curaleaf and

its assets for their own selfish interests in violation of their fiduciary duties.

120.    The Individual Defendants made usurious loan arrangements and diverted Curaleaf cash flows in a pattern that would provide a maximum benefit to the Individual Defendant at the direct expense of Curaleaf and Plaintiff.

121.    The Individual Defendants and DRH structured the loan arrangement with Curaleaf so that it would pay out returns on the "cost of capital," but never make any contribution towards or retire the principal.

122.    The Individual Defendants and DRH devised a scheme to purport to permanently divert the lion's share of returns from Curaleaf in perpetuity, and claim or control all membership interests in Curaleaf without the payment of any consideration therefor.

123.    The foregoing was never disclosed to the Plaintiff at any point of time.

124.    Further, the Individual Defendants falsely told Plaintiff at the time of entering into the MOU, and thereafter until the license and Simsbury Site were secured, that she would control the operations and mission of Curaleaf in her capacity as member and President.

125.    The Individual Defendants also falsely told Plaintiff, after ousting her from Curaleaf, that she did not own one-third of the membership interests in Curaleaf upon its formation under Connecticut law.

126.    Moreover, the Individual Defendants falsely represented to Plaintiff, at the time of entering into the MOU and thereafter, that the loan arrangements between Curaleaf, on the one hand, and the Individual Defendants and DRH, on the other hand, were commercially legitimate financing mechanisms, when in fact they were part of a usurious

and illegal scheme to divert a grossly inflated share of the profits from Curaleaf's operations and sale to themselves.

127.    The Individual Defendants further misrepresented to Plaintiff that they had the power and authority, acting through Curaleaf's so-called Board, to terminate her employment with Curaleaf, seize her membership interest, enter into usurious loan arrangements with themselves and DRH, and usurp the role and rights of members in Curaleaf.  These were all part of a pattern of false statements and fraudulent behavior by the Individual Defendants and DRH in their dealings with Plaintiff and DRH.

128.    The Individual Defendants knew at the time that they made the false representations and concealed the material facts alleged above, that such representations were untrue, and that the Individual Defendants were concealing material facts from Plaintiff.

129.    The Individual Defendants acted with the intention to deceive and mislead Plaintiff, to fraudulently induce Plaintiff to agree to create Curaleaf and obtain a producer license, the Simsbury Site, hire employees and consultants, and establish Curaleaf's operations and bona fides, and thereby capture the benefit of Curaleaf and its assets for themselves to the detriment of Plaintiff and Curaleaf.

130.    Not knowing of the Individual Defendants' and DRH's false representations and scheme at the time, Plaintiff acted in reliance on the Individual Defendants' false representations and material omissions, and thereby gave limited consent to create Curaleaf, obtain a producer license from the State, and undertake efforts to establish Curaleaf's operations as a going concern.

131.    Plaintiff reasonably relied upon the misrepresentations of the Individual

Defendants and DRH as true.

132.    By reason of the foregoing, Plaintiff has suffered damages in an amount to be established at trial, including all consequential, exemplary, punitive, and multiple damages and attorneys' fees and costs incurred by Plaintiff.

**SIXTH CAUSE OF ACTION:**
**UNJUST ENRICHMENT**
**(PLAINTIFF v. DEFENDANTS)**

133.    Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

134.     The Individual Defendants through their vehicle DRH took complete control over the operations and assets of Curaleaf, which were largely established and brought to fruition based on Plaintiff's expenditure of considerable time and effort.

135.    Plaintiff reasonably expected to be remunerated for her efforts, including with an ownership interest and a share in the profits in Curaleaf, because of her substantial efforts.

136.    The Individual Defendants orchestrated usurious loan arrangements detrimental to Curaleaf, and directed current and future Curaleaf cash flows to the investors of DRH on commercially unreasonable and usurious terms.

137.    The Individual Defendants did not pay any consideration for Curaleaf's membership interests.

138.    As a result of the conduct described above, Defendants have been unjustly enriched at the expense of the Plaintiff.

139.    Defendants should be required to disgorge all monies, profits, gains and membership interests which they have obtained or will unjustly obtain in the future at the expense of Plaintiff, and a constructive trust should be imposed thereon for the benefit of

20

Plaintiff.

## SEVENTH CAUSE OF ACTION:
## CONVERSION
## (PLAINTIFF v. DEFENDANTS)

140.     Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

141.     Defendant Birnbaum, along with the other Individual Defendant and the DRH Board, usurped control over Curaleaf and its assets.

142.     Using usurious loan arrangements, the Individual Defendants and the DRH Board diverted the cash flows in such a fashion that they would reap the vast majority of the profits from Curaleaf's operations.

143.     The diversion of the profits in Curaleaf to DRH is without Plaintiff's knowledge or consent.

144.     The Individual Defendants, and their instrument DRH, never conveyed any value to Curaleaf in exchange for (putatively) seizing control or ownership of Plaintiff's membership interest in Curaleaf.

145.     The Individual Defendants and DRH, without right or permission from Plaintiff, improperly exercised control over Curaleaf and its assets, and converted and misappropriated Curaleaf's assets for the benefit of the Individual Defendants and DRH.

146.      As a direct and proximate result of this conduct, Plaintiff has not had the use of the profits and assets of Curaleaf converted by the Defendants for their exclusive use.

147.     Moreover, the Individual Defendants and DRH, without right or permission from Plaintiff, improperly diverted and seized Plaintiff's membership interest in Curaleaf for the benefit of the Individual Defendants and DRH.

148.     As a direct and proximate result of this conduct, along with her wrongful termination of employment by the Individual Defendants, Plaintiff was deprived of her rights to share in the profits of Curaleaf as a member.

149.     Defendants' conduct harmed Plaintiff.

150.     As a result of Defendants' conduct, Plaintiff is entitled to an award of compensatory damages in an amount to be determined at trial.

151.     As a direct and proximate result of the conscious, willful, wanton, and malicious conduct of the Individual Defendants, Plaintiff has suffered compensatory, multiple, and punitive damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION:**
**FEDERAL DECLARATORY JUDGMENT ACT FOR VIOLATION OF C.G.S. § 37-4**
**(PLAINTIFF v. DEFENDANTS)**

152.     Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

153.     In return for their investment of funds, DRH and the Individual Defendants purport to skim a 30% preferred return, labeled as a cost of capital, from Curaleaf's cash flow in perpetuity.

154.     The purported loan or funds advanced to Curaleaf by DRH and the Individual Defendants is in violation of C.G.S. § 37-4, as the effective interest rate on this disguised loan is in excess of 12%.

155.     Under C.G.S. § 37-4, Defendants are prohibited from recovering principal or interest or any part of the loan prohibited by C.G.S. § 37-4.  Further, no action shall be brought to recover principal or interest, or any part thereof, on any loan prohibited by sections 37-4, 37-5 and 37-6, or upon any cause arising from the negotiation of such loan.

156.     By reason of the foregoing, Plaintiff seeks a declaration on behalf of herself

and Curaleaf that the loan arrangement designed by the Individual Defendants, for their

benefit, is usurious and that Defendants may not seek to recover principal or interest or any

part of the loan represented by funds invested by them in Curaleaf.

## NINTH CAUSE OF ACTION:
## VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT
## (C.G.S. § 42-110b)
## (PLAINTIFF v. DEFENDANTS)

157.    Plaintiff restates the allegations contained in the paragraphs above as if fully

set forth herein.

158.    The Defendants engaged in unfair or deceptive acts or practices against

Plaintiff by purportedly ousting her from her employment, membership interests, share of

profits and losses, and control over the operations of the general partnership for false,

contrived and selfish reasons as set forth hereinabove and throughout.

159.    The Defendants further engaged in unfair trade practices against Plaintiff by

engaging in self-dealing, including causing Curaleaf to enter into a usurious loan

arrangement to the detriment of Plaintiff.

160.    Defendants violated C.G.S. § 42-110b when they engaged in unfair or

deceptive acts or practices in the conduct of any trade of commerce, as set forth above.

161.    Plaintiff suffered an ascertainable loss of money or property, real or personal,

as a result of Defendants' use or employment of a method, act or practice as described

above.

162.    This Court has discretionary power to award punitive damages as it deems

necessary or proper under C.G.S. § 42-110g(a).

163.    By reason of the foregoing, this Court may grant damages to Plaintiff in the

amount to be determined at trial and in such further amounts as may be proven at trial,

including all exemplary, punitive, and multiple damages and attorney fees incurred by Plaintiff.

## TENTH CAUSE OF ACTION:
## VIOLATION OF CONNECTICUT UNIFORM SECURITIES ACT
### (C.G.S. §§ 36b–2 *et. seq*.) (PLAINTIFF v. INDIVIDUAL DEFENDANTS)

164.    Plaintiff, restates the allegations contained in the paragraphs above as if fully set forth herein.

165.    Defendants violated C.G.S. § 36b-4(a) and (b).

166.    Defendants directly and indirectly misrepresented material facts in connection with the offering of Curaleaf securities, and employed a scheme or artifice to defraud by making any untrue statements of material fact and by omitting to state material facts necessary in order to make the statements made, in light of the circumstances they were made not misleading.

167.     Defendants engaged in acts, practices, or a course of business which operated as a fraud or deceit upon Plaintiff.

168.    Defendants falsely represented to Plaintiff that she would exercise control and direction over the operations of Curaleaf in connection with the offering of Curaleaf securities, in order to induce Plaintiff to devote her time and efforts to Curaleaf.

169.    Defendants falsely represented to Plaintiff that she had a vested membership interest in Curaleaf in connection with an offering of Curaleaf securities, in order to induce Plaintiff to devote her time and efforts to Curaleaf.

170.    Specifically, Defendants falsely represented to Plaintiff that she would be entitled to a share of the profits and losses from Curaleaf, as well as a one-third share of half of the sales proceeds from a sale of Curaleaf, among other things.

171.    Defendants falsely represented to Plaintiff that she would share in the success of Curaleaf by being vested in a share of Curaleaf's cash flows and liquidation value upon a sale of Curaleaf to third parties in order to induce Plaintiff to devote her time and efforts to Curaleaf.

172.    By reason of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial including all consequential, exemplary, punitive, and multiple damages and attorneys' fees incurred by Plaintiff.

**ELEVENTH CAUSE OF ACTION:**
**DECLARATORY JUDGMENT PURSUANT TO THE FEDERAL**
**DECLARATORY JUDGMENT ACT**
**(PLAINTIFF v. DEFENDANTS)**

173.    Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

174.    A real controversy exists between Plaintiff and Defendants regarding their respective rights and obligations, and their ownership of Curaleaf and DRH.

175.    Plaintiff has no adequate remedy at law.

176.    Judicial declarations are necessary at this time to ascertain Plaintiff's vested membership interest in Curaleaf.

177.    Plaintiff seeks entry of an Order declaring that the MOU is binding on all parties.

178.    Plaintiff further seeks entry of an Order declaring that she owns a one-third membership interest in Curaleaf, or in the alternative, declaring that Plaintiff and the Individual Defendants are general partners in Curaleaf and all of its attendant business opportunities.

**WHEREFORE,** Plaintiff requests that this Court enter an Order granting to Plaintiff

the following relief:

a.   Declaring that Plaintiff has a one-third membership interest Curaleaf, or in the alternative, declaring that Plaintiff and the Individual Defendants are general partners in Curaleaf and all of its attendant business opportunities;

b.   Declaring that the MOU is binding on the Parties;

c.   Ordering specific performance of the MOU;

d.   Awarding back-pay and other benefits to Plaintiff for improper termination of her employment with Curaleaf;

e.   Awarding all compensatory, consequential, exemplary, punitive, and multiple damages incurred by Plaintiff;

f.   Awarding to the Plaintiff reasonable attorneys' fees and costs expended in litigating this matter; and

g.   Awarding to the Plaintiff such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims so triable.

Respectfully Submitted,


EILEEN KONIECZNY


By her attorneys,


By: _/s/ Colin R. Hagan_____
Colin R. Hagan, CT 29640
SHLANSKY LAW GROUP, LLP
1 Winnisimmet Street
Chelsea, MA 02150
Phone: (617) 497-7200
Fax:     (866) 257-9530
E-mail:  Colin.Hagan@slglawfirm.com

Dated: December 10, 2014